Soule, I guess. Good morning, Ms. Vossler. Good morning, may it please the Court, Sharon Vossler on behalf of the appellant, Mr. Jose Jesus Minjares. Your Honors, this case depends entirely on ownership under the Defend Trait Secret Act. This is the only claim that Highland Consulting Group, Inc. was able to recover on at trial. They had three days of trial and the evidence that they put on never established that they, in fact, were the owners of the Trait Secret. The DTSA makes clear that only owners may claim, may make a claim under the statute for damages. Did the jury make an inference that Highland Group Consultants was the public face or the public marketed name of the corporate entity that was the named plaintiff in this case? I don't think they were able to make such an inference, it would not have been reasonable. There was testimony from Mr. Carriage himself when confronted with the chart that showed the collective group of entities. Here's what Mr. Carriage testified to, at least in part. This is at a docket entry 342 at page 64, actually the beginning of the cross-examination in the case. Here's the exchange, if you just bear with me a moment. Okay, Mr. Carriage, the plaintiff in this case is the Highland Consulting Group, Inc. Is that right? The one who is bringing suit against Mr. Minjares, my client, is an entity called Highland Consulting Group, Inc., correct? Mr. Carriage says yes. Then the counsel says, and in opening, this is what you're talking about, your attorney was showing the jury the different participants in this process and we don't see the name of the plaintiff, the Highland Consulting Group, Inc., in this list. Can you explain to me why? Mr. Carriage says, the Highland Group Consultants is the name that we present to the marketplace. The name that you are referring to is the legal entity that is bringing suit. Could not a reasonable jury infer from that testimony that Highland Group Consultants is the public face of the company, of the entity that was bringing suit in this case, in the same way that Publix is the name brand and the name entity of Publix LLC, the corporate entity that owns Publix? Well, Your Honor, the difference is here on the very next page of the testimony. The follow-up question was by Mr. Wormuth, Mr. Carriage, does this diagram, meaning the collective diagram of entities, reflect what you were describing a moment ago as the Highland Group marketed to the public? And he says yes. I understand. Could a reasonable jury not hear all of that testimony and make the conclusion that Highland Group Consultants, which is the same name, just reordered, and that's stamped on every single one or just about every single one of the trade secret documents, is the public facing entity of the corporate entity which brought the suit? Even if they made that inference, it would not solve the ownership issue because the trade secrets involve development by other entities besides HCGI, if HCGI was even involved in the first place. Well, I guess I'm having trouble understanding that. If that's the public name and that is stamped on every single one of these, why a jury couldn't conclude that that is the entity which created these products? Because HCGI Advisors, for example, was the Mexican entity that was created to do the work for the subsidio mine owned by Fresnillo down in Mexico. These were the trade secrets that were allegedly misappropriated and led to the damages amount of $1.2 million. There's testimony by Mr. Seville and Mr. Carriage that without that information, which was solely developed by HCGI Advisors, because that is the only entity that did the work in Mexico that was under the contract. So let's talk about that. So for instance, in referring to the Minera Saucedo, the proposal that was accepted, it's stamped at the front Highland Group Consultants, the same name that he testified to in the case of the corporate entity, right? I believe the document that you were referring to also had the entity, the Canadian entity on it. I'm not saying it didn't, but if I'm looking at Plaintiff's Exhibit 24, Trial Exhibit 24, stamped right at the top. The first thing you see is the Highland Group Consultants. And that's not the only thing we have for all the documents. So let's take a look about one Highland document. This is Plaintiff's Exhibit 2. Right at the top of one Highland is Highland Group Consultants, that same name. Same thing for the mining vertical. The right at the top right-hand corner of Plaintiff's Exhibit 134 is the Highland Group. The testimony about these trade secrets was consistently inconsistent. Well, here's the problem. It seems to me that you're wanting us to impose a requirement of proving a negative. For all the reasons that Judge Luck has been going through, it seems to me that there's a lot of reason to think that a jury could have inferred that Highland Consulting Group Inc. is the owner. But you're wanting, because there's some confusing aspect to the record, to have imposed a requirement of disproving that the Mexican affiliate, HCG Advisors, is not the owner, got to prove that they're not the owner. And I don't see where that's the requirement. It seems to me this record would have allowed the jury to infer that Highland Consulting Group Inc. is the owner, and that's basically the end of it. However, Your Honor, it is the plaintiff's burden of proof to prove the very first element, which is ownership. This was the first element that was brought to the jury. And you can prove it by circumstantial evidence. You don't have to have direct evidence. There's overwhelming circumstantial evidence that the plaintiff owns. I don't believe the record shows that. These were separate entities that were set up to do work on other continents in other countries. Mr. Kerridge himself owned more than one entity within this collective. It is unclear that he was acting for the plaintiff. He often testified that he himself trademarked the name. A trademark is something that must be registered under an owner's name. They had a messy way they did business. There's no doubt about it. They've got this corporate chart. They've got all these different entities that own other entities. But as Judge Lux said, and I've got the documents here, the Highland Group, it's a trade name they're using for all of it. And they basically used it for what they did. And basically, there's enough evidence that the Highland Group Consulting Group Inc. was who is the plaintiff, who in the complaint is even defined as, quote, Highland. They use Highland. They use Highland Consultant. I mean, they just used a whole bunch of names. However, at trial, it was very messy, but I think it was for the jury to sort out. Yes, and it was put before the jury that Highland was not the name of a company. Trial counsel for Mr. Meares brought it up in openings that that was not the name and to notify the jury to pay attention to who, what entity was actually being talked about throughout the trial. I thought an opening plaintiff's counsel said, my client is Highland, and distinguished Highland from HCG advisors. They may have done that. Plaintiff may have done that, but then right after that, Mr. Meares put the jury on notice that in his position, that wasn't going to be good enough and that these entities were separate and they were operating separately. They were developing trade secrets separately. None of that's evidence, of course, right? No, but however, it just gives context. What I read to you is the evidence. Yes, and the evidence shows that he identified that collective group as the Highland group, and that was what the logo was, and that is what the trademarks were. That is not who the owner can be because it is not a singular entity. Even though he specifically said that that the name entity is what we bring it under and the public facing name is the same name that's stamped on all of these trade secrets. He said it was the trade name for the collective group. He didn't say that in the testimony I read. Yes. There's contrary testimony. There's no doubt. Let me be clear. You could have won and we could be here where you'd be the appellee and they'd be appellant and you'd win for the same reason that I think they win, which is that there's some evidence from what the jury could conclude, which is the only standard that we really have. Well, it's also whether it is a reasonable inference and not just mere speculation. And so they had to affirmatively prove- Is it not reasonable that the same exact name just reordered Highland Consulting Group as opposed to Highland Group Consulting, which is stamped on every single document in which he says the public facing name of the entity which is bringing the lawsuit is not reasonable for a jury to conclude? Not so, because one of the documents, this was, I believe, the proposal advertised Highland the firm as having a global presence and acting through firmly established- That's not one of the trade secret documents, is it? No, but it shows how they were doing business. And again, HCG Advisors was one of those separate global entities that was developing trade secrets. And also he mentioned people by name who had no relation or no explained relation to the company. For example, Pat Burns. Mr. Carriage testified that Pat Burns, a colleague, but of who, developed the, I believe it was the Prospectus algorithm that was one of the trade secrets used in this trial. However, we don't know who Pat Burns is. Pat Burns could have been someone outside the company, another, like a consultant, two consultants, for example. The question isn't who created it, it's who has legal and equitable ownership. Correct. Or who has legal equitable rights to it. And if it's stamped with the name of the company, and he's saying that that's the public facing name of the entity which is bringing the lawsuit, why can't a jury conclude reasonably whether it's true or not as a separate issue, but reasonably conclude that that entity has legal or equitable title, at least partially, to those trade secrets? Because Your Honor, that is not what the evidence showed. It showed that there were separate entities. And also under the Pioneer case, there was, this is similar factually, because they kept referencing the company, and there was no affirmative statement that the plaintiff at issue, which was a parent company, owned those alleged trade secrets. This is the same factual situation we have here. And in that case, that wasn't enough under the Defend Trade Secret Act to qualify as the legal title holder. And also, I guess this goes to standing, as well, under the statute. Okay, Ms. Fosler, you've saved four minutes for rebuttal. Correct. Let's hear it from Ms. Vargas. May it please the Court, I'm Rebecca Vargas. I'm here on behalf of the Highland Consulting Group. With me is my law partner, Stephanie Serafin. Highland proved it owns these trade secrets that Menorah's misappropriated. Highland's witnesses, as this Court has pointed out in his questions, testified that Highland developed, maintained, and kept confidential these trade secrets. It stamped almost every page with its logo, and Highland's 100% owner, James Carriage, testified that Highland Group Consulting is the public-facing name of this company. This is a global consulting company with 30 years of experience that works across multiple industries and throughout the globe. The testimony, it was Highland who had the right to control these documents. Highland developed the documents. Highland kept them under password-protected files on its servers. It was Highland who required anyone using these trade secrets to enter a confidentiality and nondisclosure agreement. As this Court has pointed out, this was Menorah's choice to make this a jury issue. In all the cases Menorah is citing and relying on, it's usually the question of who owns the trade secret would come up in a motion to dismiss at the very beginning of the case, or sometimes a motion for summary judgment. Instead, Menorah's made this a jury question. About five times in the brief, they say the question of ownership was squarely before the jury. We agree all the evidence must be viewed in the light most favorable to Highland. And when the Court does that, it can see that Highland actually was the entity that controlled these documents and had the right to own them. It had the right legal and equitable title. And that's very clear when you look at the employment agreement that Menorah signed with Highland Group. He agreed that the trade secrets belonged to the Highland Consulting Group. The Plainness Council explained in their opening statement that instead of using the words Highland Consulting Group throughout every time they referred to Highland, that it was going to just be referring to them simply as Highland. And that's what happened throughout the testimony. The 100% owner, James Kerridge, testified that he was referring to them as Highland, that Highland Group Consultants was the logo, that Highland Group Consultants was the trade name. If the Court has no other questions, given all of the concerns expressed, the Court really has a very good handle on all the parts of the record that... Let me just point out to you, even on his agreement, they use the Highland Group. They don't use the corporate name. They need to consider all their documents. They can do an assignment from all these entities and give it to the plaintiff and be done with it. It's just kind of a very messy situation here. I think there's probably enough evidence, but it's not going to be a lot clearer. But you just said he signed it with the plaintiff. He didn't sign it with the plaintiff. He signed it with the Highland Group. I mean, it doesn't have the actual plaintiff name. But anyway... Right.  And it is throughout the documents, they do present themselves in the public as the Highland Group. And the Highland Group Consultants, as Judge Luck read. That's right, Your Honor. But if you... Your point, though, is because the issue was fairly put to the jury, it was incumbent upon Menorahs to explain why the evidence did not prove that ownership. Right. And the jury obviously found that it did. Right. And the statutory question, if... And so now the question for us is, is there enough evidence to support that verdict? That's right, Your Honor. And all the conflicts in the evidence, the credibility issues, I feel Menorahs is trying to point to one little sentence out of the transcript or one line here or there, but you can't really cherry pick the evidence at this point. The question is whether a reasonable jury, when all the evidence is viewed in the light most favorable to Highland, could find in its favor. And that's what the jury did. On question one of the verdict form, it's asked the jury if Highland owned the trade secrets. And it listed the five trade secrets and issues in the case and said any one of those would give a yes answer. And that's what happened. The jury answered yes. And there's abundant evidence throughout this record that's supporting the jury's verdict. There was also no confusion, if I could just say, based on the fact that it was actually an affiliate who had the ultimate project proposal in Mexico that was HCG, because there was also evidence in the record from the testimony of James Carriage that it was Highland Consulting Group that had the discovery and design phase. That was a four-week period where they came up with a project proposal. We've already discussed the project, the proposal for the project that was on Highland. And even if there was confusion, right? That's right, Your Honor. That's right. Thank you, Your Honor. With that, if there are no further questions, I'll just ask the court to affirm the jury's verdict. Thank you. Thank you, Ms. Fargus. Okay, Ms. Fosler, you've got four minutes. The jury was unreasonable in finding, may it please the court, sorry. The jury was unreasonable in finding that the logo was, I guess, just HCGI's logo because there was this constant explanation and undercurrent of this trial that these entities acted in concert. And just because Carriage appeared on behalf of HCGI and gave the pretense of control, control is not the law for the DTSA. This is found in, I believe, Zabit. Zabit had a similar argument put forth. They tried to make the argument of ownership under the equitable title portion and equated equitable title to equitable ownership, meaning that the plaintiff, as long as they control the trade secret, showed equitable ownership. The court there rejected that theory and found, no, control has no place and joint ownership has no place in the DTSA. It must be the legal title holder. And again, Mr. Carriage continuously referred to himself as developing the trade secrets, which is really the circumstantial evidence of the trade secrets. So I just, you know, I do not believe that it was sufficient for the jury to find that own the trade secrets. I know, again, this isn't evidence, but it was clearly an issue because at the Ori Tennis judgment as a matter of law motions that were made at the close of evidence, trial counsel for HCGI stated that consistently Highland and any of its affiliates have been used, meaning they were trying to show ownership through a collection of entities, which again is not proper under the statute. Do you have any other questions? Thank you very much. And we have your case and we'll be in recess until tomorrow. Thank you.